UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JAMES D. SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00545-JRS-DLP |
| | ) | |
| DAVID COX, | ) | |
| HARLOW, | ) | |
| ALEXANDER, | ) | |
| SEARS, | ) | |
| PIFOCLE, | ) | |
| COX, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY GRANTING MOTION TO DISMISS, GRANTING MOTION FOR LEAVE TO AMEND COMPLAINT, AND DIRECTING FURTHER PROCEEDINGS**

This action is based on James Sullivan's allegations that officers at the Terre Haute Federal Correctional Institution confiscated his property and denied him access to religious services in 2018 and 2019. The matter is before the Court on the defendants' motion to dismiss and Mr. Sullivan's motion for leave to file an amended complaint. For the reasons discussed below, the Court grants both motions and issues directions for further developing the case.

### I. Background

When the Court screened Mr. Sullivan's complaint, it summarized his factual allegations as follows:

> Mr. Sullivan was housed in the SHU from October 18, 2018 to October 8, 2019. During this time, SHU Property Correctional Officers Cox and Pifocle denied access to his personal property, namely an AM/FM radio, magazines, and books. Additionally, Correctional Officer David Cox, Correctional Officer Sears, Correctional Officer Alexander, and Correctional Officer Harlow deprived him of Catholic worship services and sacraments. Mr. Sullivan was "subjected to the same restrictions, limitations, and denial of privileges imposed upon inmates detained

under disciplinary punishment sanctions." Dkt. 1 at 5. Furthermore, SHU Property Officer Cox shook down Mr. Sullivan's cell and confiscated two magazines and a Catholic newspaper after Mr. Sullivan filed a grievance about Correctional Officer David Cox's conduct against him.

Dkt. 6 at 2.

Although Mr. Sullivan was a *federal* prisoner, the Court dismissed his property confiscation allegations as insufficient to state a due process claim under 42 U.S.C. § 1983, which concerns the actions of *state* government officials. Dkt. 6 at 4. The Court recognized plausible First Amendment retaliation and religious exercise claims under § 1983. *Id.* at 5. Following a response by Mr. Sullivan, the Court recognized additional First Amendment claims based on the denial of access to print and broadcast media. Dkt. 9.

The defendants have filed a motion to dismiss Mr. Sullivan's free-exercise and retaliation claims for failure to state a claim upon which relief may be granted. Dkt. 17; *see* Fed. R. Civ. P. 12(b)(6). The defendants do not address the access-to-media claims the Court recognized in its post-screening order except in their reply. *See* dkt. 23. Mr. Sullivan concedes in his response that his free-exercise claims are barred but opposes dismissal of the retaliation and access-to-media claims. Dkt. 20. Mr. Sullivan also has filed a motion for leave to amend his complaint. Dkt. 24. His proposed amended complaint, dkt. 24-2, discusses only retaliation and access-to-media claims.

## II. Motion to Dismiss

To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in the plaintiff's favor. *See Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018). Pleadings by pro se litigants like Mr. Sullivan are construed "liberally" and held

2

"to a less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

**A.**     ***Bivens* and *Abbasi***

The defendants correctly analyze Mr. Sullivan's First Amendment claims as proceeding under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), rather than § 1983. Section 1983 creates a cause of action for plaintiffs whose rights have been violated by *state* government actors, and *Bivens* is "the federal analog to suits brought against state officials under § 1983." *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (citing *Iqbal*, 556 U.S. at 675–76).

The Supreme Court held in *Bivens* that federal agents may be personally liable for damages arising from an unreasonable search and seizure in violation of the Fourth Amendment. 403 U.S. at 397. In *Davis v. Passman*, the Court recognized personal financial liability for gender discrimination in federal employment in violation of the Fifth Amendment. 442 U.S. 228, 249 (1979). And in *Carlson v. Green*, the Court recognized personal financial liability for prison officials' deliberate indifference to a prisoner's serious medical need in violation of the Eighth Amendment. 446 U.S. 14, 24 (1980). Since *Carlson*, the Court has declined to create any new contexts for "*Bivens*" claims.[1]

---

[1] *See Bush v. Lucas*, 462 U.S. 367, 390 (1983) (retaliatory termination of federal employee for engaging in speech protected by the First Amendment); *Chappell v. Wallace*, 462 U.S. 296, 297 (race discrimination in the military); *United States v. Stanley*, 483 U.S. 669, 684 (1987) (nonconsensual medical experiment in the military); *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (revocation of social security benefits without due process); *F.D.I.C. v. Meyer*, 540 U.S. 471, 485 (1993) (actions against federal agencies); *Correction Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (actions against private prison operators); *Wilkie v. Robbins*, 551 U.S. 537, 547-48 (2007) (due process claims against officials from Bureau of Land Management); *Minneci v. Pollard*, 565 U.S. 118, 125 (2012) (actions against a private prison operator's employees). In each of these cases, the Court reasoned there were "special factors counselling hesitation" about creating a new *Bivens* context and that alternative remedies were available to address the category of injury alleged by the plaintiffs. *Id.*

In *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017), the Court noted that its method for determining whether a statute creates a private cause of action has shifted dramatically since the mid-20th century. When *Bivens* was decided, the Court assumed it could create private causes of action to give meaningful effect to a statute. *Id.* Against this background, the conclusion that constitutional provisions similarly imply private causes of action seemed inevitable. *Id.* Today, the Court takes a more cautious approach, assuming that the "far better course" is to restrict private causes of action to statutes where Congress has explicitly conferred such a right. *Id.* This evolution in judicial philosophy suggests "that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Id.*

Nevertheless, the Court declined to overrule *Bivens*, reasoning that its vindication of constitutional rights in certain contexts, "and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it." *Id.* at 1856-57. Instead, the Court limited personal financial liability against federal officials to the contexts that arose in *Bivens*, *Davis*, and *Carlson*—unlawful search and seizure, gender discrimination in employment, and deliberate indifference to a prisoner's serious medical need in a BOP facility. *Id.* Expanding these claims to a new context is now a "disfavored judicial activity." *Id.* at 1857. When asked to extend *Bivens* to a new context, courts must consider whether there are any special factors that counsel hesitation about granting the extension and whether there are alternative remedial structures available to the plaintiff to vindicate his constitutional rights. *Hernandez v. Mesa,* 140 S. Ct. 735, 743 (2020) (citing *Abbasi*, 137 S. Ct. at 1859). While the Court has not created a definitive list of "special factors counselling hesitation," separation-of-powers principles are at the center of this inquiry, and courts must consider whether the judiciary is well-suited to weigh the costs and benefits of allowing a damages action to go forward. *Abbasi*, 137 S. Ct. at 1859.

B.     **First Amendment *Bivens* Claims**

The Seventh Circuit Court of Appeals has not decided whether *Abbasi* precludes First Amendment *Bivens* claims against prison officials. The court has issued several unpublished orders that affirmed the dismissal of the prisoner's *Bivens* claims on other grounds or remanded for additional briefing in the district court.

In *Smadi v. True*, the court reversed the dismissal of a prisoner's First Amendment *Bivens* claims, holding that the "best approach is for the district court to recruit counsel for [the plaintiff] and receive adversarial briefing." 783 F. App'x 633, 634 (7th Cir. 2019). The court reached the same outcome in *Haas v. Noordeloos*, reasoning that "in this circuit, at least, the question [of First Amendment *Bivens* claims] is unsettled." 792 F. App'x 405, 406 (7th Cir. 2019).

Three types of First Amendment claims are pending in this case. First, Mr. Sullivan concedes for purposes of the defendants' motion that his free-exercise claims cannot proceed under *Bivens*. Dkt. 20. Second, this Court has ruled—after recruiting counsel to assist the plaintiff—that federal prisoners may not bring First Amendment retaliation claims under *Bivens*. In *Fulks v. Watson*, this Court determined that First Amendment retaliation claims presented a new *Bivens* context because the Supreme Court has never recognized a *Bivens* remedy for First Amendment claims. 2:19-cv-0501-JPH-MJD, dkt. 92, 2021 WL 1225922, at *7 (S.D. Ind. Mar. 31, 2021). The Court also determined that special factors weighed against applying *Bivens* to retaliation claims by prisoners because the Bureau of Prisons' administrative remedy procedure offered alternative remedies and because recognizing retaliation claims under *Bivens* would invite too much judicial interference "with 'the problems that arise in the day-to-day operation of a corrections facility.'" *Id.* at *10–12 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). And, third, the defendants did not address Mr. Sullivan's access-to-media claims in their principal brief on the motion to dismiss.

*See* dkt. 17. But, as discussed below, the Court will provide Mr. Sullivan an opportunity to amend his complaint, and similar claims are at issue in another motion to dismiss that has been briefed by counsel and is awaiting decision in this Court. *See Piggee v. Bell*, 2:19-00601-JPH-DLP, dkts. 74, 75, 84, 85.

Accordingly, the defendants' motion to dismiss, dkt. [16], is **granted** as to Mr. Sullivan's First Amendment retaliation and free-exercise claims. The motion is **denied without prejudice in all other respects**.

### III. Motion for Leave to Amend

The defendants' motion to dismiss has given the Court occasion to revisit its order screening Mr. Sullivan's complaint. The Court now identifies two plausible paths to relief.

As the defendants note in their motion to dismiss, the Religious Freedom Restoration Act (RFRA) "provides for 'appropriate relief' for governmental action that substantially burdens a person's exercise of religion." Dkt. 17 at 8 (quoting 42 U.S.C. § 2000bb-1). Indeed, RFRA provides "prisoners more protection for their free exercise rights than is available under the First Amendment." *Id.* (citing *Holt v. Hobbs*, 574 U.S. 352, 357 (2015)). The defendants acknowledge that Mr. Sullivan's religious-exercise claims were cognizable under RFRA, *see* dkt. 17, but the Court did not acknowledge this in its screening order.

Likewise, the Federal Tort Claims Act (FTCA) allows settlement and recovery of "money damages against the United States for injury or loss of property." 28 U.S.C. §§ 2672, 2674. At screening, the Court dismissed Mr. Sullivan's confiscation-of-property claims on the theory that the *Indiana* Tort Claims Act was the proper vehicle for those claims. The Court did not address the possibility that Mr. Sullivan's property claims could proceed against the United States under the FTCA.

6

For these reasons, Mr. Sullivan's motion for leave to file an amended complaint, dkt. [24], is **granted**. Mr. Sullivan will have **through April 15, 2022**, to file a second amended complaint. If he does not do so, the Court will proceed to screen the proposed amended complaint, dkt. 24-2, that Mr. Sullivan attached to his motion.

If Mr. Sullivan chooses to file a second amended complaint, it must include the case number associated with this action, no. 2:20-cv-00545-JRS-DLP. It will completely replace the original complaint, and it will be screened pursuant to § 1915A, so it must include all defendants, claims, and factual allegations Mr. Sullivan wishes to pursue in this action.

### IV. Conclusion

The defendants' motion to dismiss, dkt. [16], is **granted** as to Mr. Sullivan's First Amendment retaliation and free-exercise claims and **denied without prejudice in all other respects**.

Mr. Sullivan's motion for leave to file an amended complaint, dkt. [24], is **granted**. Mr. Sullivan will have **through April 15, 2022**, to file a second amended complaint as discussed in Part III above.

The **clerk is directed** to change the spelling of Defendant Pifocle's name on the docket to "Prifogle." *See* dkt. 23 at 1, n.1.

**IT IS SO ORDERED.**

Date: 3/14/2022

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES D. SULLIVAN
63990-060
BUTNER - FMC
BUTNER FEDERAL MEDICAL CENTER
Inmate Mail/Parcels
P.O. BOX 1600
BUTNER, NC 27509


Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov